**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JOHN SHANNON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) NO. 2:14-CV-188 |
| | ) |
| PORTER COUNTY SHERIFF'S DEPT., a | ) |
| political subdivision of the | ) |
| State of Indiana; DAVID LAIN, | ) |
| Individually and in his capacity | ) |
| as Sheriff of the Porter County | ) |
| Sheriff's Dept.; JOHN WIDUP, | ) |
| Individually and as Warden of | ) |
| the Porter County Jail, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion for Summary Judgment, filed on September 6, 2016, by Defendants Porter County Sheriff's Department, David E. Lain and John Widup in their individual and official capacities (DE #23). For the reasons set forth below, Defendants' Motion for Summary Judgment (DE #23) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to: (1) the 42 U.S.C. § 1983 claims against David E. Lain and the Porter County Sheriff's Department; (2) the civil conspiracy and state constitutional claims; and (3) the intentional infliction of emotional distress claim against the Porter County Sheriff's Department. These claims are **DISMISSED**, and defendant David E. Lain is **DISMISSED** from this case. The motion is **DENIED** as to: (1)

the 42 U.S.C. § 1983 claim against John Widup in his individual capacity; (2) the issue of qualified immunity for John Widup; and (3) the negligence claim against the Porter County Sheriff's Department.

BACKGROUND

On May 17, 2012, Plaintiff John Shannon ("Shannon") was attacked by an inmate while he was a pretrial detainee in the Porter County Jail ("Jail"). Shannon filed this action against Defendants Porter County Sheriff's Department ("Sheriff's Department"), David Lain ("Lain") in his individual capacity and in his capacity as Sheriff of the Sheriff's Department, and John Widup ("Widup") in his individual capacity and in his capacity as Warden of the Jail (together, "Defendants"), alleging violations of 42 U.S.C. § 1983 and the Indiana Constitution, and state tort claims of intentional infliction of emotional distress and negligence. (DE #1-1.) The case was removed to federal court, and after the close of discovery, Defendants filed the instant motion for summary judgment on September 6, 2016. (DE #23.) Shannon filed his response to Defendants' motion on November 9, 2016. (DE #29.) Defendants filed their reply to the motion on November 22, 2016. (DE #32.)

DISCUSSION

Standard

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citation omitted).

While the movant bears the initial burden of production to inform the district court why a trial is not necessary, these requirements "are not onerous" where the nonmoving party "bears the ultimate burden of persuasion on a particular issue."

*Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). A party may move for summary judgment based on either "affirmative evidence that negates an essential element of the nonmoving party's claim" or by "asserting that the nonmoving party's evidence [is] insufficient to establish an essential element of the nonmoving party's claim." *Id.* at 1169 (citation and internal quotations omitted). A party opposing a properly supported summary judgment motion may not rely on allegations or denials in his own pleading, but rather, must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Material Facts

On April 17, 2012, Shannon was taken into custody at the Jail on a failure to appear warrant on multiple misdemeanors. A day or two thereafter, Shannon met with Porter County Police Department Detective Reynolds and a Porter County prosecutor to discuss an incident Shannon had witnessed involving a man named Mark Hurst ("Hurst"). During that meeting, Shannon agreed to testify at Hurst's criminal trial. Shannon requested no deal in return for his testimony, but asked to be protected while being held at the Jail. They told Shannon that he would receive protective custody

and be kept separate from Hurst, who was also being held at the Jail. According to Shannon, an unidentified jail employee stated that he was in contact with Warden Widup and advised Shannon that he would be placed in protective custody. Shannon believed that protective custody meant that he would not be housed with the general population of inmates.

The Jail's standard operating procedure on inmate classification states that jail personnel "shall flag inmates who . . . have a special need." (DE #29-11 at 3.) "Some inmates may have conditions or situations that call for them to have increased supervision, segregation, or special living conditions. These special needs include . . . [p]rotective custody, for reasons such as . . . [t]estifying as a witness." (*Id.* at 4.) The Jail's standard operating procedure on segregation housing states that jail personnel "shall segregate an inmate if the inmate . . . [n]eeds protective custody." (DE #29-10 at 1.) Widup and other jail officers testified that it is well understood within the jail community that inmates who testify against other inmates are at a unique or greater risk of harm from other inmates, and recognized the special need for protective custody for inmates who testify as witnesses. (*See* DE #29-2 at 19 ("unique risk"); DE #29-6 at 4 ("greater risk"); DE #29-5 at 3-4 (acknowledging that a testifying inmate's life and health are in jeopardy, and that he faces a risk

from the general population as well as from the inmate against whom he testifies).)

The Jail had three areas in which inmates were segregated from the general population: (1) sex offender segregation, including child molesters, who were segregated for their own protection; (2) medical segregation, for inmates needing medical care; and (3) disciplinary segregation, for inmates who had violated Jail rules. The Jail did not have "protective custody" segregation for testifying inmates because the Jail was "not set up" for it. (DE #29-2 at 11.) The Jail's practice was to keep a testifying inmate separated from the inmate against whom he testified by placing a "keep separate" designation in its data entry system. A "keep separate" designation was the "most basic form" of protective custody at the Jail. (DE #29-3 at 12.) Widup recalled that three inmates had been relocated to other county jails because they were testifying against other inmates who were housed in the Jail.

On April 19, 2012, Detective Reynolds called the Jail's classification officer David Cavanaugh ("Cavanaugh") and requested that a keep separate order be entered for Shannon and Hurst. Cavanaugh entered the keep separate order, and Shannon and Hurst were kept separate while Shannon was in custody. Lain, Widup and Assistant Warden Ron Gaydos ("Gaydos") testified that they did not receive any notice from the prosecutor's office that Shannon needed

special housing arrangements, and were not aware of anyone requesting special protection for Shannon.

On April 20, 2012, Shannon met with Cavanaugh to determine Shannon's housing assignment. Cavanaugh completed a jail classification form in the process of determining Shannon's housing assignment. While the form did not indicate that Shannon was testifying against Hurst, it noted that Shannon was to be kept separate from Hurst. Shannon was then housed in general population.

Shannon was deposed prior to testifying at Hurst's criminal trial. Sometime between Shannon's deposition and trial testimony, Shannon communicated with Widup while in the Jail's booking area. Their accounts of this communication differ considerably. Shannon testified that he "told [Widup] my concern" while in the Jail's booking area, and Widup "said he's aware of the situation and would make sure that I am moved today. . . . [T]hen he called Lieutenant Young over. . . . [Young was] told by the warden [Widup] to make sure that I am moved, and which [*sic*] I did not get moved." (DE #29-7 at 15.) In contrast, Widup testified that Shannon merely "yelled at me about something" while in the booking area. (DE #29-2 at 11.)

On April 25, 2012, Shannon testified at Hurst's criminal trial. Shannon told Detective Reynolds, the prosecutor, and the officer who transported him to the courthouse that he was still

being housed in general population.  The officer told Shannon that he would handle it.  Shannon also spoke to jail Captain Ronald Taylor ("Taylor") about not being in protective custody.  Taylor told him that protective custody was for child molesters, and that Shannon would be moved that day.  Shannon was never placed in protective custody.

After Hurst's trial, Shannon was in line for food with other inmates when a jail officer congratulated him on testifying against Hurst.  Thereafter, Shannon was assaulted by some inmates, which resulted in red marks on his face.  Shannon summoned an officer using the emergency button in his cell, and told him that another officer had disclosed to inmates that Shannon was a snitch, that he feared for his safety, and that he was supposed to be in protective custody.  An officer's incident report dated May 2, 2012, states that an officer received inmate request forms about removing Shannon from general population.  According to the incident report, the officer discussed the requests with Shannon, who said that he had been threatened by an unidentified inmate, that he did not fear for his safety, and that "the reason alot [sic] of people do not like him is because he is a witness against another inmate."  (DE #29-15 at 2.)  The officer initially left Shannon in his cell, but transferred Shannon to disciplinary segregation later that day because of the threats written in the inmate request forms.  (*Id.*)  Shannon was housed in disciplinary

segregation until May 6, 2012, when he was transferred to general population.  (DE #29-3 at 5.)

When Shannon returned to general population, an unknown inmate punched him and called him a snitch.  Shannon does not recall any injury from this assault.  Shannon spoke with an officer about this assault, and was transferred to disciplinary segregation to be reclassified on May 7, 2012.  (DE #29-3 at 5.) Shannon was transferred back to general population on or about May 12, 2012.  (*Id*. at 5-6.)

On May 17, 2012, Shannon was sitting at a table eating dinner in a common area when inmate Sergio Perez ("Perez") struck him repeatedly in the head with what Shannon believes was batteries wrapped in a sock.  Shannon did not fight back.  It is undisputed that Perez attacked Shannon because he had testified against Hurst, and that Shannon did not know Perez before the attack.  Perez's attack lasted less than a minute, after which Shannon returned to his cell.  Other inmates followed Shannon to his cell, and threatened him not to say anything about the attack.  After the inmates left, Shannon pushed the emergency button in his cell, but no officer responded.  He then telephoned his mother and wife. Within ten minutes, officers removed Shannon from his cell, telling him that they learned of the attack from his mother and wife.

Shannon was transported to the hospital for treatment of his injuries, which included a fractured nose and eye socket.  When

Shannon returned to the Jail, he was housed in medical isolation. While in medical isolation, Shannon was not seen by a nurse or provided with a shower or an ice pack. Shannon pushed the emergency button several times to request an ice pack. Shannon maintains that officers "Tased" him, hit him, and placed him in a "suicide chair" for 12-13 hours, causing him to urinate and defecate on himself. (DE #29-7 at 44.) Thereafter, Shannon was returned to medical isolation until he was released from custody.

Neither Shannon nor Defendants knew Perez was planning to attack Shannon. After learning of Perez's attack and Shannon's injuries, Widup asked Captain Taylor to investigate the incident. Widup maintains that he learned that Shannon had testified against another inmate through Taylor's investigation, and that no one had contacted him about any arrangement for protective custody for Shannon. In the past, the prosecutor or other agency had contacted Lain or Widup to request protective custody for inmates or detainees at the Jail. Widup testified that because Shannon was testifying against another inmate, he would have qualified for protective custody automatically, and that if Widup had been aware that Shannon was testifying against another inmate, he would have been relocated. Widup further testified that if Shannon had been in protective custody, he would not have been injured.

Section 1983 Claims against Lain and Widup in Their Individual
Capacities

Count II of the Complaint asserts claims pursuant to 42 U.S.C.
§ 1983 against all Defendants, including Lain and Widup in their
individual and official capacities. Defendants argue that the
Section 1983 claims against Lain and Widup in their individual
capacities must be dismissed. Section 1983 provides a federal
cause of action any time an individual who, under color of state
law, deprives another of any right, privilege, or immunity as
provided by the Constitution and laws of the United States.[1] 42
U.S.C. § 1983. Individual capacity suits "seek to impose personal
liability upon a government official for actions he takes under
color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165, 105
S. Ct. 3099, 87 L.Ed.2d 114 (1985) (citation omitted).
"[I]ndividual liability under § 1983 requires 'personal
involvement in the alleged constitutional deprivation.'" *Minix v.
Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (quoting *Palmer v.
Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)). "Although
direct participation is not necessary, there must at least be a
showing that the [prison official] acquiesced in some demonstrable

---

[1] Shannon was a pretrial detainee at the time of his alleged
constitutional deprivation, and thus, his Section 1983 claims are
analyzed under the Due Process clause of the Fourteenth Amendment
rather than the Eighth Amendment. *See Velez v. Johnson*, 395 F.3d
732, 735 (7th Cir. 2005). The Seventh Circuit has found "little
practical difference between the two standards." *Id.* (citation
omitted).

way in the alleged constitutional violation." *Palmer*, 327 F.3d at 594 (citations omitted).

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (citations and ellipses omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834; *see Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (noting that a constitutional violation does not occur "every time an inmate gets attacked by another inmate"). The alleged deprivation must be "sufficiently serious," and the prison official must have had "deliberate indifference" to inmate health or safety. *Farmer*, 511 U.S. at 834 (citations omitted). There is no dispute that the threat of which Shannon complains (being attacked by an inmate) is sufficiently serious to support a constitutional claim. The parties dispute whether Lain and Widup were deliberately indifferent to Shannon's safety. Proving deliberate indifference requires more than a showing of negligence or even gross negligence; the official must have acted with the equivalent of criminal recklessness. *See Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (proving deliberate indifference to an inmate's safety requires conduct "equivalent [to] criminal recklessness"); *Borello v. Allison,* 446 F.3d 742, 749 (7th Cir.

2006) ("[M]ere negligence or even gross negligence does not constitute deliberate indifference."). In order to prove deliberate indifference, a plaintiff must show that the official had "actual, and not merely constructive, knowledge of the risk" of serious injury to plaintiff; "specifically, [the official] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (citation and internal quotation marks omitted). Whether a prison official has the requisite knowledge of a substantial risk is a question of fact. *Farmer*, 511 U.S. at 842.

Defendants argue that the Section 1983 claims against Lain and Widup in their individual capacities should be dismissed because neither Lain nor Widup were personally involved in the alleged constitutional deprivation. Defendants maintain that prior to Perez's attack, Lain and Widup were unaware of any issues between Shannon and Perez, or that Perez posed a threat to Shannon. However, a "prison official cannot escape liability by showing that he did not know that a plaintiff was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Dale*, 548 F.3d at 569 (citation and internal quotation marks omitted). Thus, Lain's and Widup's lack of awareness that Perez posed a threat to Shannon is insufficient to avoid liability.

Defendants insist that Lain and Widup had no knowledge of any threat to Shannon's safety, and only learned that Shannon had testified against another inmate after he was attacked by Perez. Shannon responds that Lain and Widup were personally involved because his mother "spoke directly with Sheriff Lain and Warden Widup about the Shannon situation." (DE #29 at 18.) In support, Shannon cites his own interrogatory answer, which was not based upon his personal knowledge. "[A] court may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citations omitted). "[A] party cannot use his own interrogatory answer, which is almost certainly hearsay when offered by that party himself to prove the truth of its contents, to support or oppose summary judgment." *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 n.2 (7th Cir. 2011). Shannon offers no other evidence of Lain's personal involvement. Because Shannon does not proffer any admissible evidence raising a genuine issue of material fact as to whether Lain was personally involved in the alleged constitutional deprivation, the Section 1983 claim against Lain in his individual capacity must be dismissed. *See Palmer*, 327 F.3d at 594 (dismissing § 1983 claims against sheriff in his individual capacity where plaintiff failed to make any showing that sheriff was aware of the risk faced by plaintiff).

Shannon maintains that Widup was personally involved in the alleged constitutional deprivation because he told Widup that he needed protective custody before he was attacked by Perez. Shannon testified in his deposition that he spoke to Widup about his concern in the Jail's booking area before he testified at Hurst's criminal trial. According to Shannon, Widup "said he's aware of the situation and would make sure that I am moved today," and told Lieutenant Young "to make sure" that Shannon was moved. (DE #29-7 at 15.) Defendants contend that Shannon's representation of his communication with Widup is an exaggeration of the facts. Widup's recollection is that Shannon once "yelled at me about something" in the booking area. (DE #29-2 at 11.) Defendants focus on Shannon's testimony that this communication was "in passing" to argue that this communication is insufficient evidence of Widup's personal involvement (DE #29-7 at 15), and insist that Widup did not know that Shannon testified against another inmate until after Perez's attack. However, the Court cannot discount Shannon's testimony merely because the communication took place in passing. *See Gevas*, 798 F.3d at 482 (reversing judgment as a matter of law where prisoner's "quite brief" interaction with acting warden of operations in the prison kitchen was sufficient to communicate the essential nature of the threat to the prisoner and to support the inference that the warden had actual knowledge of the threat).

To determine whether an official had actual knowledge of the threat to an inmate's safety, courts consider the information the inmate conveyed to the official. Conveying to officials "only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Id.* at 480-81 (citations omitted). Instead, "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Id.* at 481 (citation omitted). Shannon does not specify what information he relayed to Widup about his concern, but testified that Widup said that he was aware of Shannon's situation, promised to move him, and ordered Lieutenant Young to make sure Shannon was moved. Widup testified that inmates who testify against other inmates are at a unique risk of harm from other inmates, and that as a testifying witness, Shannon would have qualified for protective custody automatically. The factfinder may believe that Shannon communicated his concern to Widup and Widup instructed an officer to make sure that Shannon was moved. If so, the factfinder reasonably could infer that Widup had notice of facts from which he could infer that Shannon faced a serious risk of substantial harm, and that Widup actually drew this inference, and was thus subjectively aware of the danger

Shannon faced. *See Hatry v. County of Suffolk*, 755 F. Supp. 2d 422, 438 (E.D.N.Y. 2010) (denying summary judgment where a jury could find that the officer was aware of a substantial risk to inmate's safety given evidence that he knew that the inmate was a cooperating witness, and knew the risks facing informants generally). Considering the evidence in the light most favorable to Shannon, a genuine issue of fact exists regarding whether Widup had actual knowledge of the threat to Shannon's safety.

Defendants also contend that Shannon has presented no evidence of Widup's deliberate indifference to Shannon's safety. "Once prison officials know about a serious risk of harm, they have an obligation 'to take reasonable measures to abate it.'" *Dale*, 548 F.3d at 569 (citing *Borello*, 446 F.3d at 747). "[I]f prison officials are aware of a serious threat and 'do nothing, that is deliberate indifference.'" *Gidarisingh v. Pollard*, 571 F. App'x 467, 471 (7th Cir. 2014) (quoting *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995)). "Prison officials who had actual awareness of a substantial risk to the health or safety of an inmate incur no liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent." *Guzman*, 495 F.3d at 857 (citation and internal quotation marks omitted).

Shannon argues that Defendants knew that he was in danger, but did nothing about it. He points to his communications with the unidentified jail officers who were present when he spoke with the county prosecutor, as well as officers who transported him to and from the courthouse and served him the subpoena for his trial testimony. But "the fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). Moreover, there is no evidence that Widup knew about any of these communications before Perez attacked Shannon. Nor does Shannon proffer evidence indicating that, before Perez's attack, Windup knew that a jail officer had disclosed to other inmates that Shannon had testified against Hurst, or that other inmates had assaulted Shannon for being a snitch. "[U]nder § 1983, a plaintiff may not rely on the doctrine of *respondeat superior* to hold supervisory officials liable for the misconduct of their subordinates." *Doyle v. Camelot Care Ctrs.*, 305 F.3d 603, 614 (7th Cir. 2002) (citation omitted). Thus, Widup cannot be held liable for the misconduct of other jail officers.

Shannon's only admissible evidence relating to Widup is his testimony regarding their communication in the Jail's booking area. As noted above, Widup's recollection of this communication differs considerably. Defendants contend that Shannon did not

present his complaints directly to Widup, and that Widup was never
told that Shannon required any type of special accommodation.  The
Court must consider the evidence in the light most favorable to
Shannon as the nonmoving party.  Thus, the Court must assume that
the communication took place according to Shannon's testimony,
*i.e.,* that Shannon told Widup his concerns, and that while Widup
told Shannon that he would be moved out of general population that
day, Shannon was not moved.[2]  *See Gidarisingh*, 571 F. App'x at 471
("[B]ecause the record suggests that [defendant] did nothing, a
reasonable jury could conclude that he deliberately disregarded a
serious risk to [plaintiff's] safety").  Because genuine issues of
material fact exist as to whether Widup acted with deliberate
indifference to Shannon's safety, the Court denies Defendants'
motion for summary judgment on the Section 1983 claim against Widup
in his individual capacity.

---

[2] The Court notes that while Shannon argues that Widup did nothing
to protect him, he testified that Widup instructed Lieutenant Young
to make sure he was moved.  None of the parties address Widup's
alleged instruction.  If the factfinder finds Shannon's testimony
to be credible, it may find that Widup's instruction to Young was
a reasonable response to the threat to Shannon's safety.  *See
Gidarisingh*, 571 F. App'x at 471 ("Had [defendant] taken some
reasonable action in response to the threat, even if it did not
ultimately prevent an attack, he might avoid liability.").

<u>Qualified Immunity</u>

Defendants assert that Lain and Widup are entitled to qualified immunity from liability for Shannon's Section 1983 claims. "Qualified immunity protects public servants from liability for reasonable mistakes made while performing their public duties." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (citation omitted). "Whether a government official is entitled to qualified immunity is a legal question for resolution by the court, not a jury." *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008) (citations omitted). In determining whether an official is entitled to qualified immunity, a court asks two questions: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015) (citation omitted). "Although the privilege of qualified immunity is a defense, the plaintiff bears the burden of defeating it." *Betker v. Gomez,* 692 F.3d 854, 860 (7th Cir. 2012) (citation omitted).

Defendants maintain that Lain and Widup are entitled to qualified immunity because they did not violate Shannon's constitutional rights. According to Defendants, Shannon has presented no evidence that Lain or Widup were aware of a safety threat to Shannon until after Perez's attack, and thus, they could

not have been deliberately indifferent to the risk of harm to Shannon.  As shown above, this is true for Lain, and therefore he is entitled to qualified immunity.  As for Widup, the Court has found that Shannon raises genuine issues of material fact regarding Widup's actual knowledge of the threat to Shannon's safety and deliberate indifference to his safety.

Defendants assert that Widup acted reasonably under the circumstances because he relied upon the Jail's classification process.  They point to evidence that classification officer Cavanaugh heeded Detective Reynolds' request that a "keep separate" order be entered for Shannon and Hurst, and that the order was followed.  However, Widup testified that because Shannon was testifying against another inmate, he would have qualified for protective custody automatically, and that if Widup had been aware that Shannon was testifying against another inmate, he would have been relocated.  Widup's testimony raises a question as to whether it was reasonable to rely on the classification process in this case.  It is possible that further development will show a set of facts under which qualified immunity might apply to Widup, but for now the Court cannot determine as a matter of law that qualified immunity applies to the Section 1983 claim against him.  *See Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) ("When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial.").

Defendants also argue that Shannon has not demonstrated that the constitutional right was clearly established. "A plaintiff can show that a right is 'clearly established' by statute or constitution in at least two ways: (1) he can point to a clearly analogous case establishing the right to be free from the conduct at issue; or (2) he can show that the conduct was so egregious that no reasonable person could have believed that it would not violate established rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 508-09 (7th Cir. 2015) (citation and internal quotation marks omitted). A prison official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015) (citation omitted). "[T]he inquiry into whether a right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Borello,* 446 F.3d at 750 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L.Ed.2d 583 (2004)); *see Kingsley*, 801 F.3d at 832 (courts "must define the right in question with a sufficient degree of particularity").

Shannon asserts that the Constitution imposes on officials a duty to protect inmates from other inmates, and protects inmates

from the deliberate indifference of jail officials toward their safety. He cites *Velez v. Johnson,* 395 F.3d 732 (7th Cir. 2005), in which the Seventh Circuit states, "it is plainly the right [of an inmate] to be free from deliberate indifference to rape and assault. There can be no debate that this right was clearly established at the time." *Id.* at 736 (holding that an officer's failure to adequately respond to a pretrial detainee's emergency call button during an assault by his cellmate violated the detainee's constitutional rights); *see Haley v. Gross*, 86 F.3d 630, 643 (7th Cir. 1996) (upholding a jury finding of deliberate indifference where an inmate told the officer that his cellmate made him fear for his safety and the officer "said he would 'check into [moving the inmate],' but nothing happened"). Shannon's right to be free from deliberate indifference to assault was clearly established at the time he was attacked by Perez. Therefore, the Court denies summary judgment on Widup's qualified immunity defense.

<u>Section 1983 Claim against the Sheriff's Department</u>

Defendants also assert that the Section 1983 claim against the Sheriff's Department must be dismissed because Shannon has no evidence of any procedure, policy or practice that allegedly caused his deprivation.[3] A municipality may only be held liable for

---

[3] Shannon's claims against Lain and Widup in their capacities as Sheriff and Warden, respectively, will be treated as claims against

constitutional violations caused by the municipality through its own policy, practice, or custom. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To recover under *Monell*, a plaintiff must establish that (1) he suffered a deprivation of a federal right (2) as a result of an express municipal policy, a widespread custom, or a deliberate act of a decision-maker with final policymaking authority for the municipality that (3) was the proximate cause of his injury. *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014).[4] "The existence of a policy or custom can be established in a number of ways: the plaintiff may point to an express municipal policy responsible for the alleged constitutional injury, or demonstrate that there is a practice that is so widespread that it rises to the level of a custom that can fairly be attributed to the municipality." *Id.*

the Sheriff's Department because "[a]n official capacity suit is tantamount to a claim against the government entity itself." *Guzman*, 495 F.3d at 859 (citations omitted); *see McLaughlin v. Freeman,* No. 2:08-CV-58-PRC, 2013 WL 5407041, at *8 (N.D. Ind. Sept. 26, 2013) (holding that claims against Lake County Jail deputy warden in his official capacity were claims against the Lake County Sheriff's Department).

[4] Shannon states in passing that he "must demonstrate that Porter County through its final policy maker [*sic*] Chief Lain and Warden Widup made a deliberate choice among various alternatives," but offers no evidentiary support for this argument. (DE #29 at 22.) The Court will not consider this perfunctory and undeveloped argument. *See United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) ("[P]erfunctory and undeveloped arguments . . . are waived.").

The Jail's standard operating procedures state that jail personnel "shall segregate an inmate if the inmate . . . [n]eeds protective custody," and that "[s]ome inmates may have conditions or situations that call for them to have increased supervision, segregation, or special living conditions," including "[p]rotective custody" for those "testifying as a witness." (DE #29-10 at 1; DE #29-11 at 3-4.) Shannon claims that these written policies "assured" that he would be protected if he testified against another inmate. (DE #29 at 22.) However, "the Constitution does not require prison and jail authorities to ensure the safety of their detainees." *Palmer,* 327 F.3d at 597 (citation omitted).

Shannon maintains that notwithstanding the written policies, the Jail had a widespread practice of only protecting child molesters and sexual predators, thereby ensuring that he would have no protection against an attack by other inmates for testifying against an inmate. To impose *Monell* liability based on an unlawful practice, a plaintiff "must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon v. Cty. of Cook,* 819 F.3d 343, 348 (7th Cir. 2016) (citation omitted). "[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even

three." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citations and internal quotations omitted); *see Dixon,* 819 F.3d at 348 (*Monell* liability "requires more than a showing of one or two missteps"); *Palmer*, 327 F.3d at 596 ("[P]roof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference."). Aside from his own experience, Shannon does not proffer any evidence regarding inmates who testified against other inmates. Because Shannon offers no evidence of a widespread practice of failing to protect testifying inmates from attack, the Court grants Defendants' motion for summary judgment on the Section 1983 claim against the Sheriff's Department.

Civil Conspiracy and State Constitutional Claims in Count II

In addition to Section 1983 claims, Count II of the Complaint asserts that "Defendants conspired with each other, and with other employees of the Department, to deprive Shannon of his constitutionally-protected rights." (DE #1, ¶37.) Defendants argue that to the extent that Shannon attempts to assert a civil conspiracy claim, there is no evidence to support the existence of a conspiracy between Lain, Widup and other jail administrators. Shannon does not respond to this argument, and therefore waives his conspiracy claim. *See Palmer,* 327 F.3d at 597–98 (holding that a party abandoned his claim where he failed to delineate the claim in opposition to a motion for summary judgment); *Laborers'*

*Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented in response to a summary judgment motion are waived).

Defendants also argue that, to the extent Count II asserts a claim based on Article 1, Section 16 of the Indiana Constitution (*see* DE #1-1, ¶38), no private right of action exists. *See Smith v. Ind. Dep't of Corr.*, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007) ("[N]o Indiana court has explicitly recognized a private right of action for monetary damages under the Indiana Constitution."). Shannon responds that he is not seeking damages for violations of the Indiana Constitution. Because Shannon does not oppose Defendants' motion for summary judgment as to his civil conspiracy and state constitutional claims, the motion on these claims is granted.

Intentional Infliction of Emotional Distress Claim

Count I of the Complaint asserts a claim for intentional infliction of emotional distress against the Sheriff's Department.[5] To establish a claim of intentional infliction of emotional distress under Indiana law, a plaintiff must prove that the defendant: "(1) engages in extreme and outrageous conduct (2) which

_____

[5] In his response brief, Shannon acknowledges that he does not seek damages against Lain or Widup in their individual capacities for state tort claims. *See* Ind. Code § 34-13-3-5(b) ("A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally.").

intentionally or recklessly (3) causes (4) severe emotional distress to another." *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011) (citation omitted). The requirements to prove this tort are rigorous and it is found only when the conduct "exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind. In the appropriate case, the question can be decided as a matter of law." *Id.*

Defendants argue that Shannon has not offered any evidence of mental injury. *See Jimenez v. CRST Specialized Transportation Mgmt., Inc.,* 213 F. Supp. 3d 1058, 1066 (N.D. Ind. 2016) (granting summary judgment motion where plaintiff presented no evidence that the conduct caused severe emotional distress); *Tracy v. Fin. Ins. Mgmt. Corp.,* 458 F. Supp. 2d 734, 747 (S.D. Ind. 2006) (granting summary judgment motion where plaintiff "did not suffer the requisite serious mental distress contemplated by this theory of liability"). Shannon's one-paragraph response cites to no facts whatsoever regarding his alleged mental injury; rather, it focuses solely on whether Defendants' actions in denying him protective custody and strapping him to a "suicide chair" for 12-13 hours were extreme and outrageous. (DE #29 at 26.) "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852,

859 (7th Cir. 2005) (citations omitted).  Because Shannon has produced no evidence that he suffered severe emotional distress, the Court grants Defendants' motion to dismiss Shannon's intentional infliction of emotional distress claim.

Negligence Claim

Count I of the Complaint also alleges a negligence claim against the Sheriff's Department.  Under Indiana law, "[a] plaintiff seeking damages for negligence must establish (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011).  "Whether a particular act or omission is a breach of duty is generally a question of fact for the jury." *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003) (citation omitted).  Nevertheless, summary judgment is appropriate on the issue of breach of duty "where the facts are undisputed and only a single inference can be drawn from those facts." *Id.* (citation omitted).

When a party is in the custodial care of another, "the custodian has the duty to exercise reasonable care to preserve the life, health, and safety of the person in custody." *Sauders v. County of Steuben*, 693 N.E.2d 16, 18 (Ind. 1998); *see Trout v. Buie,* 653 N.E.2d 1002, 1008 (Ind. Ct. App. 1995) (noting that Indiana Code 36-2-13-5(a)(7) sets forth the duty of the Sheriff "to take care of the county jail and the prisoners there").  "The

appropriate precautions will vary according to the facts and circumstances presented in each case." *Sauders*, 693 N.E.2d at 18. The duty is to "take reasonable steps under the circumstances" to protect an inmate from harm. *Id*. Defendants argue that the Sheriff's Department did not breach the duty to provide reasonable care. They point to the "keep separate" order for Shannon and Hurst, as well as evidence that when Shannon advised jail officers that inmates were acting out against him, he was removed from the threat by being re-located within the Jail. Defendants insist that these were reasonable steps to prevent harm to Shannon. They maintain that because the attack by Perez was unforeseeable, Shannon's negligence claim fails.

Shannon proffers evidence that jail officers were aware that (1) Shannon was testifying against another inmate, (2) that a testifying inmate was under greater risk of harm from other inmates, and (3) that inmates had assaulted Shannon for being a snitch twice before Perez's attack. He also relies on the Jail's written policy of placing testifying inmates in protective custody. While Defendants argue that the Sheriff's Department used reasonable care by issuing the "keep separate" order, Widup testified that if he had been aware that Shannon was testifying against another inmate, Shannon would have been relocated. Widup also testified that Shannon would not have been injured if he had been provided protective custody. The Court finds that whether

the Sheriff's Department used reasonable care to preserve Shannon's safety under the circumstances is a material fact in dispute. As such, Defendants' motion for summary judgment on the negligence claim against the Sheriff's Department is denied.

CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (DE #23) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to: (1) the 42 U.S.C. § 1983 claims against David E. Lain and the Porter County Sheriff's Department; (2) the civil conspiracy and state constitutional claims; and (3) the intentional infliction of emotional distress claim. These claims are **DISMISSED**, and defendant David E. Lain is **DISMISSED** from this case. The motion is **DENIED** as to: (1) the 42 U.S.C. § 1983 claim against John Widup in his individual capacity; (2) the issue of qualified immunity for John Widup; and (3) the negligence claim against the Porter County Sheriff's Department.


DATED:  September 11, 2017          /s/ RUDY LOZANO, Judge
                                    United States District Court